IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| SCOTT K. HUTSENPILLER and LORI A. HUTSENPILLER, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 180167N |
| v. | ) ) ) | **ORDER GRANTING PLAINTIFFS'** |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | **MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR** |
| Defendant. | ) | **SUMMARY JUDGMENT** |

This matter came before the court on the parties' cross motions for summary judgment.

The parties filed Stipulated Facts and Stipulated Exhibits A through I. Plaintiffs attached to their

motion a Declaration of Scott K. Hutsenpiller (Scott[1]), to which Defendant objects because it

asserts facts not in the stipulated facts or exhibits. (*See* Def's Resp to Mot, Nov 27, 2018.) The

parties filed additional briefs on the cross motions and did not request an oral argument or other

hearing. This matter is now ready for the court's determination.

## I. STATEMENT OF FACTS

Plaintiffs purchased residential property (the property) in New Hampshire in 2004 and

used it as their personal residence until they moved to Washington in 2008. (Stip Facts at ¶¶ 1-

2.) The property is "a single family historic home on 16 +- acres with barn[.]" (Ex G at 1.)

Upon moving to Washington, Plaintiffs immediately offered the property for sale. (Stip Facts at

¶3.) It did not sell, so Plaintiffs leased it with a term beginning on April 1, 2010, and ending

June 30, 2011, although the tenants broke the lease and vacated in December 2010. (*Id.* at ¶¶4-

---

[1] Ordinarily the court refers to individuals by their last names. However, Plaintiffs share the same last name, Hutsenpiller, so the court will use their first names.

5.) From 2011 through 2013, they "continued to try to sell and rent the [p]roperty" without any success. (*Id.* at ¶¶ 7-8.) Plaintiffs sold the property for $439,550 on April 22, 2013. (Ex A at 13.)

Plaintiffs leased the property for $1,800 per month in 2010. (Ex F at 1.) Plaintiffs characterized the rate as a "fair rental value in an arm's length transaction." (Decl of Scott at ¶7.) In mid-December 2011,[2] Plaintiffs corresponded with a potential tenant who expressed interest in renting the property; they discussed scheduling a walkthrough of the property in early January 2012. (Ex I at 1-2.) On March 29, 2012, Plaintiffs sent to the potential tenants a proposed lease with a term beginning May 1, 2012, and ending April 30, 2013, for rent of $1,800 per month. (*Id.* at 3-11.) Shortly thereafter, the deal fell apart, evidently due to disagreements regarding the lease and background check. (*Id.* at 12.)

Plaintiffs signed a listing agreement with a realtor on December 27, 2012, that was effective from December 27, 2012, through April 1, 2013. (Ex G.) A "leasing addendum" to the agreement authorized the realtor to lease the property for $1,850 with all utilities except water paid by the lessee. (*Id.* at 3.) The lease term was six months "with [two] month notice if property goes under agreement for sale." (*Id.*) Plaintiffs' realtor wrote on December 18, 2012: "So at month [four] this goes month to month, but with a [two] month notice required for ouster of the tenant." (Ex H at 1.) In an email dated January 26, 2013, Plaintiffs' realtor wrote:

> "They [the potential tenants] are looking at other rental homes too. They are good
> with showing the house for sale while they are in it, after April 1st, 2013. They
> understand that the lease is [six] months and that after [six] months it is month to
> month. They are hoping for a longer lease if possible, so month to month would
> actually work for them if it did not sell, however, I told them the goal was to sell
> it."

(*Id.* at 3.)

---

[2] The conference decision references repairs that Plaintiffs made in 2011 after they evicted their tenant. (Ex C.) However, no such evidence from 2011 and 2012 was provided to the court.

Plaintiffs did not occupy the property after moving to Washington in 2008. (Decl of Scott at ¶¶ 4-5; *see also* Def's Mot for Summ J at 3 (agreeing that Plaintiffs abandoned all future personal use of the property after they moved in 2008).)

Plaintiffs consistently treated the property as business property beginning with their 2010 tax return and reported rental expenses held in suspense as required by Internal Revenue Code (IRC) section 469 from 2011 through 2013. (Ptfs' Mot for Summ J at 5, citing Stip Facts ¶¶ 6, 8-9.) In 2010, they reported rental income of $16,200 from the property and expenses of $23,724 for net a loss of $7,524. (Ex E.) The expenses included $9,549 for taxes and $7,749 for depreciation, but no amount for mortgage interest.[3] (*Id.*) Plaintiffs reported the 2013 sale on Form 4797, used for the sale of business property. (Ex A at 13.) In 2013, they reported a loss of $109,084 from rental real estate activity (including losses suspended under IRC section 469) and a loss of $30,567 from the sale of the property. (Stip Facts at ¶¶ 9-11; *see also* Ex A at 9, 13.) Defendant disallowed those deductions. (Stip Facts at ¶ 12; *see also* Exs B-D.)

Plaintiffs maintain that their rental expenses are deductible under IRC sections 167, 168, and 212, which allow deduction of expenses for property used in a trade or business or for property held for the production of income where the activity does not rise to the level of an active trade or business. (Ptfs' Mot for Summ J at 6.) They claim that their loss from the 2013 sale of the property is deductible under IRC section 165 and accompanying regulations. (*Id.*) Defendant argues that Plaintiffs' deductions are not allowed because they did not convert the property from personal use to property held for the production of income. (Def's Mot for Summ J at 3.) In its view, Plaintiffs lacked a profit motive with respect to the property, so any

---

[3] Plaintiffs' 2013 Schedule E reported $5,293 in mortgage interest and $3,495 in depreciation, but only $566 in taxes. (Ex A at 9.) Rental expenses in 2013 totaled $12,674. (*Id.*)

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TC-MD 180167N    3

deductions are limited under IRC section 183(a).  (Def's Resp to Mot at 1-2, Dec 12, 2018).  The

parties agree that the factors set forth in *Newcombe v. Commissioner,* 54 TC 1298 (1970) govern

the analysis.  (Ptfs' Mot for Summ J at 7; Def's Mot for Summ J at 2.)

## II.  ANALYSIS

The issue presented is whether, for the 2013 tax year, Plaintiffs may deduct a loss on the

sale of the property under IRC section 165 and suspended losses from their rental real estate

activity under IRC sections 167, 168, 212 and 469.  The deductibility of those losses depends on

whether Plaintiffs converted the property in 2010 from personal property to property held for the

production of income.

The Oregon legislature intended to "[m]ake the Oregon personal income tax law identical

in effect to the provisions of the [IRC] relating to the measurement of taxable income of

individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs

of the state[.]"  ORS 316.007.[4]  "The Department of Revenue 'shall apply and follow the

administrative and judicial interpretations of the federal income tax law,' regarding the

allowance of deductions and evidence needed for deductions to be substantiated."  *Kirwan v.*

*Dept. of Rev.*, 21 OTR 424, 428 (2014), citing ORS 316.032(2).

The parties presented this case on cross motions for summary judgment.  The standard

for summary judgment is provided by TCR 47 C,[5] which states in part:

> "The court will grant the motion if the pleadings, depositions, affidavits,
> declarations, and admissions on file show that there is no genuine issue as to any
> material fact and that the moving party is entitled to prevail as a matter of law.
> No genuine issue as to a material fact exists if, based upon the record before the

---

[4] Unless otherwise stated, the court's references to the IRC, the federal Treasury Regulations (Treas Reg), and the Oregon Revised Statutes (ORS) are to the versions in effect for the 2013 tax year.

[5] TCR 47 is made applicable through the Preface to the Magistrate Division Rules (stating that "rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant") and Tax Court Rule-Magistrate Division 13 B (authorizing the court to "apply TCR 47 to motions for summary judgment, to the extent relevant").

court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

A.      *Evidence Submitted by Declaration*

Defendant raises a threshold evidentiary objection to Plaintiffs use of a declaration to present additional evidence beyond the stipulated facts and exhibits. (*See* Def's Resp to Mot, Nov 27, 2018). Plaintiffs respond, first, that the parties specifically contemplated the assertion of additional facts in good faith and, second, that Defendant does not dispute any of the new facts asserted. (Ptfs' Reply to Def's Objection at 1-2, citing Stip Facts Reservation B.)

TCR 47 expressly contemplates the use of declarations to support a motion for summary judgment. Except for expert opinions, "affidavits or declarations must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant or declarant is competent to testify to the matters stated therein." TCR 47 D. A party opposing summary judgment "may not rest upon the mere allegations or denials of that party's pleading," but rather "must set forth specific facts showing that there is a genuine issue as to any material fact for trial." TCR 47 D; *see also Grant Cty Assessor v. Dayville Public Sch. Dist. 16J*, 20 OTR 240, 245 (2011).

Here, Defendant did not file any affidavits, declarations, or other evidence to rebut the factual assertions made in Scott's declaration. Accordingly, the court finds no basis to reject Scott's declaration and will consider it along with the stipulated facts and exhibits.

B.      *Overview of Applicable Law*

The parties agree that the outcome of this case turns on the application of the five factors identified in *Newcombe* used to determine whether a personal residence has been converted to a property held for the production of income. The five factors are: (1) the length of time the house was occupied by the taxpayer as a personal residence before placing it on the market for sale; (2) whether the taxpayer permanently abandoned all further personal use of the house; (3) the character of the property (recreational or otherwise); (4) offers to rent; and (5) offers to sell. *Newcombe*, 54 TC at 1300-1301. "No one factor is determinative and all of the facts and circumstances of a particular case must be considered." *Bolaris v. Comm'r*, 776 F2d 1428, 1433 (9th Cir 1985), citing Treas Reg § 1.183-2(a).

The *Newcombe* factors are meant to reveal whether the taxpayer's primary purpose was to realize a profit from the property as required to take the deductions at issue. *See Bolaris*, 776 F2d at 1432 (taxpayer must have the "predominant purpose and intention of making a profit"); *Newcombe*, 54 TC at 1303 (the "key question" is "the purpose or intention of the taxpayer in light of all the facts and circumstances"); *Johnson v. Comm'r*, 59 TC 791 (1973) (taxpayers lacked an intent to profit from an oceanside cottage that they never advertised for rent); and *Murphy v. Comm'r*, 66 TCM (CCH) 32, 1993 WL 244039 at *3 (1993) (taxpayer cannot sustain the burden of proof "merely by showing that there was a purpose of making a profit if that purpose was *secondary* to a *primary* nonqualifying purpose"). Taxpayer may attempt to realize a

/ / /

profit by "rental activity involving the property" or by "post-conversion appreciation in the market value of the property." *Murphy*, 1993 WL 244039 at *2.

Before turning to an analysis of the five factors, some additional background on the IRC provisions and Treasury Regulations at issue will be helpful. An individual's deduction under IRC section 165(c) is limited to losses incurred in a trade or business, losses incurred in any transaction entered for profit, casualty losses, and theft losses. Generally, an individual may not deduct a loss on the sale of their personal residence. *See* Treas Reg § 1.165-9(a). However, "[i]f property purchased or constructed by the taxpayer for use as [their] personal residence is, prior to its sale, rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss sustained on the sale of the property shall be allowed as a deduction under section 165(a)." Treas Reg § 1.165-9(b)(1). In calculating the loss, the taxpayer must use the lesser of the fair market value at the time of conversion or the adjusted basis at the time of conversion. Treas Reg § 1.165-9(b)(2).[6]

IRC section 212 allows individuals to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year * * * for the management, conservation, or maintenance of property held for the production of income[.]" Treas Reg § 1.212-1(h) states that

> "Ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible. However, ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home."

Allowable deductions include depreciation calculated by the correct method. IRC §§ 167, 168.

/ / /

---

[6] Defendant did not challenge the calculation of Plaintiffs' loss under this part of the regulation.

Except as otherwise provided in the code, IRC section 262 disallows deductions for "personal, living, or family expenses." IRC section 183 disallows deductions for activities not engaged in for profit, except to the extent of gains from such activity. An "'activity not engaged in for profit' means any activity other than one" for which deductions are allowable under section 162 or section 212(1), (2). IRC § 183(c).

C.    *Application of the Five Newcombe Factors*

"Prior to *Newcombe*, bona fide offers to rent seemed to be a decisive factor, regardless of whether any rental income was actually earned." *Sherlock v. Comm'r*, 31 TCM (CCH) 383, WL 2376 (1972). In *Newcombe*, the parties each urged the court to adopt a bright line rule: taxpayer argued that "the mere abandonment of personal use of property plus offering it for sale is sufficient" to convert it to property held for the production of income, whereas the commissioner argued that conversion can occur "only where the property is rented or offered for rent." 54 TC at 1299. The court rejected both arguments, holding that "a variety of factors must be weighed," which it then enumerated based on prior court decisions. *Id.* at 1299-1300.

1.    *The length of time the property was occupied as taxpayer's personal residence*

Occupation of a house as a personal residence for a "substantial period of time" tends to indicate that expenses "subsequently incurred while holding the property for post-occupancy sale" are personal in nature. *Newcombe*, 54 TC at 1300. However, the case law is unclear as to what constitutes a "substantial period of time." Here, Plaintiffs occupied the property as a personal residence for four years before moving to Washington. Courts have ruled both for and against taxpayers who occupied properties for a similar amount of time.[7] The parties ultimately

---

[7] *See Sherlock*, 31 TCM (CCH) 383 (five years, ruling for taxpayer); *Rechnitzer v. Comm'r*, 26 TCM (CCH) 298 (1967) (six years, ruling for taxpayer); *MaDan v. Comm'r*, 51 TCM (CCH) 241 (1986) (six months, ruling against taxpayer); *Foster v. Comm'r*, 60 TCM (CCH) 466 (1990) (four years, ruling for taxpayer); *Murphy*, 1993 WL 244039 at *2-*4 (one year, ruling against taxpayer); *Ohana v. Comm'r*, 107 TCM (CCH) 1437 (2014)

agreed that this factor was neutral with respect to Plaintiffs and the court concurs.

2. *Whether taxpayer permanently abandoned all further personal use of the property*

When taxpayer permanently abandons the property and moves to a new residence that "strongly support[s]" their position. *Bolaris*, 776 F2d at 1433. In *Newcombe*, the house was not occupied after abandonment, but was "potentially available" for such personal use. 54 TC at 1300. However, the court placed little weight on this factor because it inferred that taxpayers had removed their belongings from the house and were, therefore, unlikely to use it for personal purposes. *Id.* Here, Plaintiffs purchased a new house and moved across the country. Plaintiffs made no further personal use of the property after 2004. This factor supports Plaintiffs.

3. *The character of the property*

Some cases have "emphasized the recreational character of the property as militating against the taxpayer's position and there is some indication that buildings not being personally used may, without more, qualify as property 'held for the production of income.'" *Newcombe*, 54 TC at 1300. Plaintiffs' property was not recreational in character. This factor supports Plaintiffs, though it is of little value in the court's analysis because most courts have given little weight to this factor where the property at issue is a former residence.

4. *Offers to rent the property*

"Offers to rent are an important element in the taxpayer's favor." *Newcombe*, 54 TC at 1300. However, "the presence or the absence of rental offers should [not] be the focal point. In some cases, their presence may be of minimal significance because of the adverse state of the market for rental property. Moreover, the absence of offers to rent may sometimes be

---

(four years, ruling against taxpayer); *Redisch v. Comm'r*, 109 TCM (CCH) 1493 (2015) (four years, ruling against taxpayer).

explainable in terms of their adverse impact on efforts to sell the property." *Id.* at 1301. Several facts influence how courts view a rental agreement or an offer to rent: first, whether the rental rate or offer was the market rate; second, whether the taxpayer made diligent and bona fide efforts to rent the property; and, third, whether the lease was ancillary to a sale.

      a.     Market rate

Where the taxpayer rents property below market rate, for instance to a family member or close friend, courts typically conclude that such rentals are not conducted with a profit motive. *See, e.g., Jasionowski v. Comm'r*, 66 TC 312 (1976) (disallowing loss deduction for property leased below market to a family friend); *Eisenstein v. Comm'r*, 37 TCM (CCH) 441 (1978) (limiting rental expenses to the extent of rental income under IRC section 183 because taxpayer rented condo to parents at below market rent); *Murphy*, 1993 WL 244039 at *4 (finding lease to builder for below market rent was "in substance nothing more than a caretaking arrangement pending sale").[8] To determine market rent, courts have considered the rate necessary to cover mortgage interest and other expenses, although the market rate might be higher or lower. *See Rechnitzer*, 26 TCM (CCH) 298 (finding profit motive where rental rate was designed to cover the mortgage, though not depreciation, and lease provided that rental payments be applied to mortgage); *Bolaris*, 776 F2d at 1433-1434 (finding profit motive where rental rate was fair market value even though rate was insufficient to fully cover carrying costs); *but see Dawson*, 31 TCM (CCH) 5 (1972) (finding taxpayers lacked a profit motive where they leased property to the buyer for three months at a rental rate calculated to "cover the mortgage payment and the cost of maintaining the house and * * * result in a small profit").

---

[8] In *Sherlock*, taxpayer's daughter lived in the property rent free for one year, but taxpayer did not deduct expenses associated with the property during that year. 31 TCM (CCH) 383.

Here, the court received limited evidence on whether Plaintiffs rented the property at market rate. The parties did not stipulate as to the market rate in 2010 or subsequent years. Scott declared that the 2010 rental price was a "fair rental value in an arm's length transaction" but did not provide any supporting evidence, such as lease rates or listings of comparable properties. Defendant objected to Scott's declaration but did not expressly disagree with the assertion or provide any rebuttal evidence. Plaintiffs leased the property for $1,800 per month in 2010 and asked $1,850 per month in 2012. They reported rental expenses totaling $23,724 over nine months in 2010, which would require rent of at $2,636 per month to break even. It may be that $1,800 was all the market would bear in 2010. Although the evidence of market rent from 2010 through 2013 is scant, the evidence submitted tends to support Plaintiffs.

### b. Diligent and bona fide efforts

Particularly where taxpayer offers the property for rent but fails to secure a lease, courts consider whether the taxpayer made diligent and bona fide efforts to rent the property. *See Robinson v. Comm'r*, 2 TC 305, 307 (1943) (finding for taxpayer based on "diligent efforts" of two real estate firms, even though house was not rented or sold during two tax years at issue); *Sherlock*, 31 TCM (CCH) 383 (finding for taxpayer despite failure to secure a rental for two years because offer to rent was bona fide and on reasonable terms); *Hudson v. Comm'r*, 41 TCM (CCH) 1253 (1981) (finding property was not held out for rent or for profit-making purpose after taxpayer failed to rent apartment for over five years due to the lack of "decent" or "desirable" tenants); *Foster*, 60 TCM (CCH) 466 (finding for taxpayer who listed condo for rent through a real estate agent, even though condo was vacant for two years); *Redisch*, 109 TCM (CCH) 1493 (finding against taxpayer based on agent's "minimal" efforts to rent: featuring it in a portfolio in the company office and showing it as a model to prospective buyers).

Here, Plaintiffs successfully rented the property in 2010, which weighs significantly in their favor. Defendant argues that, even if Plaintiffs converted the property in 2010, "the court should not find that Plaintiffs continued to hold the property for the production of income after 2010" because "Plaintiffs' efforts to rent the Property were not continuous and were secondary to Plaintiffs' efforts to sell the Property." (Def's Mot for Summ J at 3.) Plaintiffs respond that the parties stipulated that they "continued to try to sell and rent the [p]roperty" from 2011 through 2013 and, in reliance on that stipulation, they did not submit additional evidence on this issue. (Ptfs' Reply at 1-2, Dec 19, 2018.) The evidence of Plaintiffs' efforts to rent in 2011 is inconclusive. However, Plaintiffs communicated with a potential tenant in late 2011 through early 2012 and listed the property with a realtor in late 2012 and early 2013.

Even if Plaintiffs failed to make diligent efforts to rent the property from 2011 through 2013, they took no actions to reconvert the property to personal use in those years. A property "converted to income-producing purposes by a rental" is not "reconverted to nonbusiness use once the rental arrangement ceases." *McBride v. Comm'r*, 50 TC 1, 10 (1968) ("if residential property is converted to income-producing purposes prior to sale, and is not reconverted by some conduct of the owner prior to sale, the owner is entitled to a deduction for a loss sustained on the sale"); *see also Newcombe*, 54 TC at 1302 (once a property is "held for investment" within the meaning of section 212, "the subsequent absence of the economic indicators of profit, during any given period of time, will not preclude a deduction").

### c. Rental ancillary to sale

Where taxpayer rents the property ancillary to a sale, the rental activity generally does not support a finding that the property was converted to business use. The important question is whether the rental was dependent upon the sale, for instance where the taxpayer leases property

to a buyer while the buyer obtains financing. *See, e.g., Dawson*, 31 TCM (CCH) 5 (where taxpayer rented property to buyer for three months while the buyer attempted to sell its current house, the court found "the purported rental agreement was executed simultaneously with the sales agreement and was only incidental to the sale of the property"); and *MaDan*, 51 TCM (CCH) 241 (taxpayer allowed potential buyer to live in house for the cost of maintenance and utilities while negotiating sale, but sought unsuccessfully to collect back rent after the sale fell through). Where the rental agreement is not dependent upon the sale, the taxpayer may prevail. *See, e.g., Rechnitzer*, 26 TCM (CCH) 298 (where taxpayer leased property for four-month term with purchase option to eventual buyer, court found "leasehold agreement was legitimate in every respect and not merely a subterfuge arranged to permit petitioners an unwarranted tax benefit").

Defendant argues that Plaintiffs' primary goal was to sell the property and they made that clear to potential tenants, thereby undercutting their attempts to rent the property. (Def's Resp to Mot at 1-2, Dec 17, 2018.) However, assuming the rental or offer to rent is bona fide and made at market rate, taxpayer's efforts to sell the property are not fatal. *See, e.g., Bolaris*, 776 F2d at 1433 (where taxpayers asked their tenant to leave after eight months so they could try again to sell the property, the court viewed taxpayer's "ancillary desire to sell the old home as an insignificant factor in determining their profit motive."); *Rechnitzer*, 26 TCM (CCH) 298 (lease clause allowed taxpayer to continue showing property to potential buyers during lease term). Here, there is no evidence that Plaintiffs' rental of the property in 2010 was ancillary to a sale, even though Plaintiffs' ultimate goal was to sell the property. Similarly, Plaintiffs' ongoing efforts to sell the property do not negate their bona fide efforts to rent the property at market rate.

/ / /

d.      Conclusion on offers to rent

Plaintiffs' rental of the property in 2010 is strong evidence in their favor, particularly because it was arm's-length and was not ancillary to a sale.  Although the extent of Plaintiffs rental efforts in 2011 is unclear, they renewed their efforts to rent in late 2011 through 2013. Moreover, the court received no evidence that Plaintiffs reconverted the property to personal use after the 2010 rental, thus it retained its character as property held for the production of income.

5.      *Offers to sell the property*

"Merely offering property for sale does not * * * necessarily work a conversion into 'property held for the production of income.' * * * But it does not follow * * * that offers for sale can never effect such a conversion." *Newcombe*, 54 TC at 1301.  "The placing of the property on the market for immediate sale, at or shortly after the time of its abandonment as a residence, will ordinarily be strong evidence that a taxpayer is not holding the property for postconversion appreciation in value." *Id.* at 1302.  "On the other hand, if a taxpayer believes that the value of the property may appreciate and decides to hold it for some period in order to realize upon such anticipated appreciation, as well as an excess over his investment, it can be said that the property is being 'held for the production of income.' " *Id.* at 1302-1303.

As with the duration of personal use, courts have ruled both for and against taxpayers who initially listed the property for sale.[9]  Here, Plaintiffs initially listed the property for sale upon abandoning it as their personal residence.  This factor weighs against Plaintiffs.

/ / /

---

[9] *See Sherlock*, 31 TCM (CCH) 383 (ruling for taxpayer); *Rechnitzer*, 26 TCM (CCH) 298 (ruling for taxpayer); *Bolaris*, 776 F2d at 1429 (ruling for taxpayer); *MaDan*, 51 TCM (CCH) 241 (ruling against taxpayer); *Murphy*, 1993 WL 244039 at *4 (ruling against taxpayer); and *Saunders v. Comm'r*, 75 Fed Appx 494, WL 22171538 (6th Cir 2003) (ruling against taxpayer).

6.      *Additional factors*

The five factors under *Newcombe* are non-exhaustive, thus other factors may be relevant. In *Saunders*, the taxpayer failed to report rental income and reported the sale as a principal residence. 75 Fed Appx 494. In ruling against the taxpayer, the court observed that the failure to report rental income "bears repeating." *Id.* at 496. Here, Plaintiffs have consistently characterized the property as business property in their tax filings and reported the 2010 rental income. This additional factor weighs somewhat in favor of Plaintiffs.

### III.  CONCLUSION

Upon careful consideration, the court concludes that Plaintiffs converted the property in 2010 to property held for the production of income. Accordingly, Plaintiffs are entitled to deduct the loss from the sale of their property under IRC section 165 and suspended losses under IRC section 167, 168, 212, and 469 in connection with their rental activities. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is granted.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is denied.

Dated this ____ day of April 2019.

_____
ALLISON R. BOOMER
MAGISTRATE

***This is an order disposing of all issues pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements. Errors in this order may be challenged by appealing the court's decision. See TCR-MD 19.***

***This document was signed by Magistrate Allison R. Boomer and entered on April 10, 2019.***